IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PAUL CANNON and HEATHER CANNON, <br><br> Plaintiffs, <br><br> vs. <br><br> MINNESOTA MINING AND MANUFACTURING COMPANY a/k/a 3M PHARMACEUTICALS, INC., et al., <br><br> Defendants. | ORDER and MEMORANDUM DECISION <br><br><br> Case No. 2:08-CV-532 CW |

Plaintiffs Paul and Heather Cannon have brought this action against Minnesota Mining and Manufacturing Company n/k/a 3M Company ("3M") and CaremarkPCS Alabama d/b/a AdvanceRX.com ("AdvanceRX") (together, the "Defendants"). The Cannons allege that Aldara, a skin cream manufactured by 3M and sold over the internet by AdvanceRX, caused Mr. Cannon health problems, including a form of dermatitis and a pulmonary embolism. Mr. Cannon pleads various claims directly related to his injuries and Ms. Cannon brings a derivative loss of consortium claim.

Now before the court are 3M and AdvanceRX's motions to dismiss and motions for summary judgment and other related motions. In support of their summary judgment motions, Defendants assert that the Cannons' claims are time-barred by the Utah Products Liability Act (the "UPLA"). For the reasons below, the court agrees with Defendants. Accordingly, their

motions for summary judgement are GRANTED. The parties' related motions will be addressed as necessary below.

## BACKGROUND

In around August 2004, Mr. Cannon was diagnosed with skin cancer on his neck. Mr. Cannon had earlier been diagnosed with an autoimmune disease as well. To treat the skin cancer, Mr. Cannon's doctor, Dr. Brent Goodsell, prescribed Aldara. Aldara is the brand name for imiquimod, an immune response modifier used to treat, among other things, superficial basal cell carcinoma. Mr. Cannon filled his Aldara prescription online from AdvanceRX.

Mr. Cannon states that he read in the information brochure provided with Aldara that the appearance of a small boil around the application site would be a positive indication that the cream was working. After the first applications in late August 2004, Mr. Cannon developed boils and a rash, which he did not think was unusual. In all, he made about eight applications of Aldara over several weeks. To Mr. Cannon's surprise, the boils and rash soon developed into extensive lesions on his neck, head, and upper arms. He also developed laryngitis, felt feverish, and had discoloration in his fingernails.

Mr. Cannon consulted with Dr. Goodsell about his symptoms. Dr. Goodsell told Mr. Cannon that they were probably the result of an allergic reaction to Aldara. Dr. Goodsell instructed Mr. Cannon to stop using the Aldara and scheduled a follow-up appointment on September 9, 2004. At that appointment, Dr. Goodsell informed Mr. Cannon he believed that the reaction to Aldara was temporary. Given the severity of the symptoms, however, Dr. Goodsell treated Mr. Cannon with steroids, which quickly reduced the symptoms. The treatments, however, did not make all of Mr. Cannon's symptoms go away entirely and in late September

2004, some of Mr. Cannon's symptoms returned. At that time, Dr. Goodsell treated Mr. Cannon with prednisone, a steroid.

As before, the steroids temporarily reduced, but did not eliminate, Mr. Cannon's symptoms. During the month of October 2004, Dr. Goodsell treated Mr. Cannon with varying levels of prednisone. Mr. Cannon's symptoms would lessen in severity on each reappearance and Dr. Goodsell still believed that the symptoms would stabilize.

On October 29, 2004, Mr. Cannon called 3M to report what he believed was his reaction to Aldara. Mr. Cannon spoke to Renee Farlee, a service specialist. Mr. Cannon reported the various symptoms that he suspected came from his use of Aldara to Ms. Farlee. According to Mr. Cannon, Ms. Farlee told him that she had never heard of similar reactions to Aldara. On November 1, 2004, Mr. Cannon wrote a follow-up letter addressed to Ms. Farlee in which he described his symptoms in detail. He prefaced his description of his symptoms by stating that after "[eight] applications of the product I was in complete misery. . ." (Ex. 2 to Aff. of R. Farlee, Dkt. No. 9.) Mr. Cannon indicated that he was sending ten pictures of his reactions for 3M to review. Also in the letter, he informed Ms. Farlee that he was concerned that the steroids with which he was being treated would cause him damage "in other areas" and that he was going to travel to California to consult immune system specialists. (Id.) Mr. Cannon ended the letter by saying that "I am very tired of this and quite concerned that this will be a lifetime of difficulties due to this problem." (Id.)

In late November 2004, Mr. Cannon assisted Ms. Farlee in preparing an FDA Adverse Reaction Report. Mr. Cannon last spoke to Ms. Farlee in February 2005. Ms. Farlee updated 3M's reports to the FDA each time she spoke to Mr. Cannon. Mr. Cannon also spoke at some

unspecified time to Dr. Curtis Keller, a doctor affiliated with 3M.  Mr. Cannon says that Dr. Keller told him that the symptoms were not related to the use of Aldara, but were due to Mr. Cannon's immune disorder.

As mentioned, in November 2004, Mr. Cannon decided to visit a clinic in California to get a second opinion on his symptoms.  Mr. Cannon saw those clinic's doctors on November 30, 2004.  According to Mr. Cannon, the California doctors avoided discussions about what caused his symptoms.  The doctors, according to Mr. Cannon, agreed with Dr. Goodsell that Mr. Cannon's symptoms were diminishing and would go away over time, at which time he could stop further steroid treatment.  Mr. Cannon says that after he went to California, he "was left with the impression" that his symptoms were "more associated" with his "over active immune system." (First Aff. of P. Cannon ¶6a.)

In February 2005, Mr. Cannon began to visit another doctor, Dr. Marta Petersen.  At some point after March 2006, Dr. Peterson diagnosed Mr. Cannon with interstitial granulomatous dermatitis ("IGD").  According to Mr. Cannon, Dr. Peterson could not confirm that the IGD was caused by Mr. Cannon's use of Aldara.  She also told Mr. Cannon that his symptoms were improving.  Mr. Cannon stated that until November 2006, the ongoing symptoms he suffered were persistent, but they did not severely affect his daily life or require hospitalizations.

In November 2006, however, Mr. Cannon developed severe lung problems.  He was hospitalized and placed in the intensive care unit.  He reports being on life support for about a month.  Mr. Cannon was diagnosed at that time with a pulmonary embolism.  Mr. Cannon was in and out of the hospital for several months in late 2006 and early 2007.  In about March 2007, Mr. Cannon consulted with Dr. Sawitzke.  Dr. Sawitzke opined that an adverse reaction to Aldara

caused Mr. Cannon's IGD and pulmonary embolism.

The Cannons filed suit against Defendants in Utah state court on December 28, 2007 and filed a second amended complaint in June, 2008. The Cannons bring nine causes of action against Defendants: strict products liability based on design defect and failure to warn; "delivery of product;" negligent misrepresentation; strict products liability; negligence; gross negligence; civil conspiracy; breach of warranty; and loss of consortium. On July 14, 2008, Defendants removed this action to this court, invoking diversity jurisdiction.

Once before this court, Defendants made their present motions for summary judgment. In support of their motions for summary judgment, Defendants argue that Mr. Cannon discovered or reasonably should have discovered his injury by November 2004 at the latest. According to Defendants, the controlling Utah statute gave the Cannons two years from that time to file their claims. Because the Cannons filed a year after the limitations period expired, reason Defendants, their claims are barred. Defendants also seek judgment against Ms. Cannon on her loss of consortium claim, arguing that her claim fails if Mr. Cannon's claims fail. The Cannons have moved to be allowed time for further discovery under Rule 56(f) of the Federal Rules of Civil Procedure to respond to the motions.

## ANALYSIS

I.  **Summary Judgment Standards**

"Summary judgment is proper if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Faustin v. City & County of Denver, Colo., 423 F.3d 1192, 1198 (10th Cir. 2005) (citations and internal quotation marks

omitted). See also Fed R. Civ. P. 56(c). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1216 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, Defendants are permitted to move for summary judgment on their statute of limitations defense. As explained by the Tenth Circuit:

> A defendant may use a motion for summary judgment to test an affirmative defense which entitles that party to a judgment as a matter of law. The defendant making such a motion must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law.

Hutchinson v. Pfeil, 105 F.3d 562 (10th Cir. 1997) (citations omitted).

## II. Are the Cannon's Claims Time-Barred Under Utah Statute?

The question now before this court is whether the Cannons' claims are barred by the relevant statute of limitations. The first issue is which statute of limitations applies to their claims. Defendants argue that the UPLA applies to all of the claims, without regard to the label placed on the claim. The Cannons assert that while the UPLA may cover some claims, others are governed by the four-year limitations period for general tort and contract claims. As explained below, the Defendants are correct.

The UPLA contains a two-year statute of limitations for civil actions brought under the

6

UPLA. See Utah Code Ann. § 78B-6-706. To determine whether a claim arises under the UPLA for statute of limitations purposes, the court should determine whether the plaintiff alleges an "injury caused by a defective product" that was "defective when sold." Utah Local Gov't Trust v. Wheeler Machinery Co., --- P.3d ----, 2008 WL 5191454, *9 (Utah, Dec. 12, 2008). If a cause of action meets those criteria, it is subject to the UPLA's limitations period. See id.

Here, the Cannons' claims all relate to injuries Mr. Cannon allegedly suffered from Aldara. The Cannons allege that the Aldara was defective when sold. Notably, this analysis applies to Ms. Cannon's loss of consortium claim, which is derivative of Mr. Cannon's claims. See Utah Code Ann. § 30-2-11(4) ( "A claim for the spouse's loss of consortium shall be. . . subject to the same defenses, limitations, immunities, and provisions applicable to the claims of the injured person."). Because all of the Cannons' claims meet the test for arising under the UPLA, they are all governed by the UPLA's two-year limitations period.

The UPLA's two-year limitation period is not absolute, however, as it contains a discovery rule. The relevant section of the UPLA states that:

> A civil action under this part shall be brought within two years from the time the individual who would be the claimant in the action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause.

Utah Code Ann. § 78B-6-706.

There is no dispute that Mr. Cannon used Aldara and experienced some unexpected and serious symptoms by September 2004. It is also not contested that the Cannons did not file this action until December 2007, over three years after Mr. Cannon's initial reaction. The key question is when the two year statute of limitations began to run on the Cannons' claims related

to Mr. Cannon's use of Aldara.[1]  Defendants maintain that the time began to accrue as soon as Mr. Cannon experienced the initial symptoms and attributed them to Aldara.  The Cannons contend that the period did not begin to run until they learned from Dr. Sawitzke in March 2007 that Mr. Cannon's IGD and lung problems may have been caused by his earlier use of Aldara in August 2004.

      A.      **When Should the Cannons Have Known About the Harm?**

The first questions are when the Cannons suffered "harm" as contemplated by the UPLA and when they discovered or should have discovered the harm.  Utah Code Ann. § 78B-6-706.  Defendants argue that Mr. Cannon suffered "harm" in August or September 2004, when he suffered the initial severe symptoms, and that the Cannons immediately knew of the harm.  The Cannons respond that Mr. Cannon's initial alleged reaction to Aldara was not a sufficient harm because they believed it was a temporary allergic reaction that was diminishing and would eventually disappear.  They contend that they should not be charged with knowledge of the harm until Mr. Cannon was diagnosed with IGD and later suffered the pulmonary embolism.

The parties did not cite any Utah cases directly discussing what constitutes "harm" under the UPLA.  Both sides, however, have relied on Utah cases interpreting the statute of limitations contained in Utah's medical malpractice statute as relevant to reading the UPLA.  One of these cases, Seale v. Gowans, 923 P.2d 1361, 1365 (Utah 1996), stands for the proposition that to establish that a plaintiff suffered an injury sufficient to begin the running of the limitations

---

[1] Because the UPLA contains a discovery rule, the Cannons' argument that Defendants should be estopped from asserting a statute of limitations defense is unavailing.  See Russell Packard Dev., Inc. v. Carson, 108 P.3d 741, 747 (Utah 2005) (holding that equitable exceptions to statutes of limitations apply only if there is no statutory discovery rule that would apply.)

period, a defendant must show proof that the plaintiff suffered "actual damages." In supporting this conclusion, the Seale court approvingly cited a California case for the proposition that a "breach of professional duty causing only nominal damages, speculative harm, or the threat of future harm does not suffice to create [a] cause of action for negligence." Id. (summarizing Steingart v. White, 198 Ca. App. 3d 406 (1998), emphasis added).

As mentioned, the Cannons argue that there is a factual dispute as to whether Mr. Cannon suffered or knew of any "actual damages" until some long time after his initial alleged reaction to Aldara. According to the Cannons, while the various symptoms Mr. Cannon suffered in August and September 2004 were severe, they believed that the symptoms were the result of a temporary allergic reaction that would disappear with time. Several undisputed facts support this position. First, there is no dispute that Mr. Cannon's initial symptoms immediately decreased in severity after Dr. Goodsell treated Mr. Cannon in September 2004. Further, Defendants do not dispute that Mr. Cannon's symptoms, while persistent, appeared to be less serious over time. Moreover, Mr. Cannon states, and Defendants do not challenge, that no doctor with whom Mr. Cannon consulted believed that any of his symptoms were a permanent problem until he was diagnosed with IGD in around March 2006. Defendants also do not contest that Mr. Cannon believed that the ongoing symptoms were little more then a nuisance and Mr. Cannon did not require any visits to the hospital allegedly related to Aldara until November 2006. The essence of the Cannons' argument is that until they knew about the IGD, the only damage of which they were aware was a diminishing and temporary allergic reaction to Aldara. Defendants, in the Cannons' view, could not prove that the Cannons knew that they had suffered anything more than nominal damages until, at the earliest, Mr. Cannon was diagnosed with IGD in about March 2006. (The Cannons

suggest March 2007, when Mr. Cannon consulted Dr. Sawitzke, but either date would save their claims.)

Defendants counter that there is no dispute that the Cannons suffered actual damages at the time of Mr. Cannon's initial alleged reaction to Aldara.  As Mr. Cannon has admitted, he was "miserable" from the symptoms, which included extensive lesions, laryngitis, fever, and fingernail discoloration.  (See Ex. 2 to Farlee Aff., Dkt. No. 9.)  There is also no dispute that Mr. Cannon believed that the symptoms, and the measures that Dr. Goodsell used to treat them, were serious enough to warrant a trip to California to see a group of immune specialists.  (See id.)  Mr. Cannon and Dr. Goodsell also viewed the alleged reaction to be sufficiently concerning as to warrant contacting 3M.

While the court is sympathetic to the Cannons' position, a reasonable jury could not find that Mr. Cannon's initial alleged reaction to Aldara is not proof of actual damages.  Nominal damages are usually reserved for situations where a plaintiff suffered no physical harm or insignificant physical harm.  See, e.g., Restatement (Second) of Torts § 907.  Here, the Cannons admit that prior to Mr. Cannon's lung problems, his alleged symptoms related to Aldara were at their most severe and "miserable" in about September 2004.  (Ex. 2 to Farlee Aff., Dkt. No. 9.)  In November 2004, Mr. Cannon was alarmed enough about the reaction and its treatment to travel out of state to consult with additional medical professionals.  Moreover, his doctor advised Mr. Cannon that the symptoms warranted a report to 3M.  Mr. Cannon reported his symptoms to 3M and had several discussions with 3M experts.  In November 2004, Mr. Cannon wrote a letter to 3M expressing his "great concern" about his continuing symptoms and concluding with the statement that he was "quite concerned that this will be a lifetime of difficulties due to this

problem." (Id.) Consequently, it is clear that by November 2004, "some harm" had "manifest[ed] itself" to the Cannons, which triggered the statute of limitations period as a matter of law. Seale, 923 P.2d at 1364.[2]

### B. When Should the Cannons Have Known About the Cause?

The second step in establishing when the UPLA's limitations period started to run on the Cannons' claims is to determine when the Cannons were on reasonable notice that Aldara was the possible cause of their harm. The Cannons maintain that they were unaware of the alleged cause of Mr. Cannon's ailments until March 2007, when Dr. Sawitzke opined that Aldara caused Mr. Cannon's skin and lung problems. Before that point, the Cannons argue, no doctor would definitively say what was causing Mr. Cannon's ongoing symptoms. Defendants respond that the Cannons were put on notice that Aldara could have caused harm to Mr. Cannon in September 2004, when Dr. Goodsell attributed serious and unexpected side effects in Mr. Cannon to Aldara.

Defendants are correct. Under Utah law, plaintiffs are not required to receive definitive confirmation of the cause of their harms to be on reasonable notice. See Deschamps v. Pulley, 784 P.2d 471, 475 (Ut. Ct. App. 1989) (under Utah medical malpractice statute, expert confirmation that harm was caused by negligence is not required to begin the limitations period). Here, the Cannons knew or should have known that Aldara was the possible cause of Mr.

---

[2] The Cannons did not brief the question of whether the occurrence of a pulmonary embolism, which was a distinct and more serious alleged reaction to Aldara than Mr. Cannon had previously suffered, might be sufficient to start a new statute of limitations. Nevertheless, the court considered this issue and has come to the conclusion that the initial harm begins the limitations period, and later injuries, even new and severe ones, do not re-start it. See e.g., Duerden v. Utah Valley Hospital, 663 F. Supp 781, 784-86 (D. Utah 1987) (ruling that under Utah medical malpractice statute, any injury starts the statute of limitations for all injuries, extensively discussing Resier v. Lohner, 641 P.2d 93 (Utah 1982)).

Cannon's symptoms when Dr. Goodsell told him that Aldara was the source of various surprising and serious symptoms and to stop applying it.  It is not material that the Cannons did not receive an unequivocal opinion that Aldara had harmed Mr. Cannon until 2007, as such an opinion is not needed.

In sum, the only reasonable conclusion from the undisputed facts in this case is that the statute of limitations on the Cannons' claims began to run in September 2004.  Under the UPLA, the Cannons had until September 2006 to file their claims.  They did not do so until over one year later, in December 2007.  Accordingly, all of their claims are barred by the UPLA's statute of limitations.  The court has not come to this conclusion lightly, given that it denies the Cannons their day in court on grounds not related to the merits of their case, but the facts and the law support no other result.

Further, the court agrees that because Mr. Cannon's direct injury claims fail against Defendants, Ms. Cannon's derivative claim fails on summary judgment as well.  As stated in the Utah loss of consortium statute, a "claim for the spouse's loss of consortium shall be. . . subject to the same defenses, limitations, immunities, and provisions applicable to the claims of the injured person."  Utah Code Ann. § 30-2-11(4).

**III.    The Cannons' Motion for Further Discovery**

The Cannons' motion for further discovery under Rule 56(f) does not prevent this result.  The Cannons assert two main areas of inquiry on which they believe further discovery is needed before the court can fully consider Defendants' summary judgment motions.  The first area can quickly be set aside.  Namely, the Cannons dispute that Mr. Cannon told Ms. Farlee that the doctors in California attributed all of his symptoms to Aldara.  The Cannons seek to depose Ms.

Farlee about her recollection on this point, which she set out in an affidavit in support of 3M's summary judgment motion. As discussed above, however, Dr. Goodsell put the Cannons on notice in September 2004 that Aldara could be the cause of harm to Mr. Cannon. What Mr. Cannon told Ms. Farlee about what the out-of-state specialists said is consequently not material.

The second area presents a more difficult question, though the answer is the same. Specifically, the Cannons cite to evidence that they argue shows that before Mr. Cannon spoke to 3M representatives about his alleged reaction, 3M was aware that the safety of Aldara was not established for individuals with immune disorders, nor was the safety of Aldara established for use on the head or face. According to the Cannons, they should be allowed discovery into what 3M, Ms. Farlee, and Dr. Keller knew about Aldara's safety at the time Mr. Cannon contacted 3M, and whether they misrepresented or concealed facts when they communicated with him.[3]

First, under Utah law, even if there is evidence of fraudulent concealment by a defendant, that concealment does not preclude a defendant from raising the statute of limitations defense. See Russell Packard, 108 P.2d at 747. Rather, attempts by a defendant to prevent discovery of a cause of action are factored into the inquiry of when a plaintiff should have known of the cause of action. See In re Hoopiiaina Trust, 144 P.3d 1129, 1140 n.21 (Utah 2006). Accordingly, even if Ms. Farlee and Dr. Keller withheld from or misrepresented information to Mr. Cannon when he communicated with them between October 2004 and February 2005, that does not affect Defendants' ability to raise the limitations defense.

---

[3] The court addresses this argument at its discretion despite the Cannons' first raising it on reply. It should also be noted that the motion to strike Mr. Cannon's second affidavit is moot, since even if the information in that affidavit is considered, it is not material to the outcome.

Moreover, the court has already found that the Cannons had sufficient information to put a reasonable person on notice that Aldara could have been the cause of harm to Mr. Cannon in September 2004, well before Mr. Cannon spoke to 3M. For the sake of argument, the court will take as true that Ms. Farlee and Dr. Keller were aware of dangers associated with Aldara for people like Mr. Cannon and believed that Aldara was the probable cause of Mr. Cannon's symptoms. The court will further assume that they misrepresented these facts to Mr. Cannon when they spoke to him between October 2004 and February 2005. Even if true, the Cannons have not shown that these facts would be material here. Specifically, the Cannons cite no authority for the proposition that a defendant's false denials of knowledge or liability have the effect of tolling the statute of limitations once the period has already started to run.

Because neither area of inquiry on which the Cannons seek discovery is material to the dispositive issues related to the Defendants' summary judgment motions, their motion under Rule 56(f) is denied.

**ORDER**

For the reasons set forth above:

    3M's Motion to Dismiss (Dkt. No. 7) is DENIED as moot;

    3M's Motion for Summary Judgment (Dkt. No. 10) is GRANTED as to all of the Cannons' claims;

    the Cannons' Motion for Extension of Time (Dkt. No. 14) is DENIED;

    Advance RX's Motion to Dismiss (Dkt. No. 25) is DENIED as moot;

    Advance RX's Motion for Summary Judgment (Dkt. No. 27) is GRANTED as to all of the Cannons' claims;

Advance RX's Motion to Strike (Dkt. No. 42) is DENIED as moot.

SO ORDERED this 11th day of February, 2009.

                                        BY THE COURT:

                                        _____
                                        Clark Waddoups
                                        United States District Judge